UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2012-5067

JOHN H. BANKS et al.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in consolidated case numbers 99-CV-4451, 99-CV-4452, 99-CV-4453, 99-CV-4454, 99-CV-4455, 99-CV-4456, 99-CV-4457, 99-CV-4458, 99-CV-4459, 99-CV-44510, 99-CV-44511, 99-CV-44512, 99-CV-365, 99-CV-379, 99-CV-380, 99-CV-381, 99-CV-382, 00-CV-383, 00-CV-384, 00-CV-385, 00-CV-386, 00-CV-387, 00-CV-388, 00-CV-389, 00-CV-390, 00-C-391, 00-CV-392, 00-CV-393, 00-CV-394, 00-CV-395, 00-CV-396, 00-CV-398, 00-CV-399, 00-CV-400, 00-CV-401, 05-CV-1353, 05-CV-1381, and 06-CV-072, Chief Judge Emily C Hewitt.

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, Illinois 60431

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street, Ste. 3200
Chicago, Illinois 60603

Mark E. Christensen, Esq.
Christensen & Ehret, LLP
135 South LaSalle, Suite 4200
Chicago, Illinois 60603
(312) 634-1014
(312) 634-1018 Fax

1

# TABLE OF CONTENTS

Table of Contents.................................................................................  i

Table of Authorities ...........................................................................  iii

Argument ............................................................................................ 1

I.    Summary of Argument…………………………………………….. 1

II.   The Claims Court's Dismissal Order Violated the Compulsory Mandate Rule………………………………………………………………………4

      A. This Court's Explicit Mandate Upholding Jurisdiction Cannot Be Circumscribed By Implication……………………………………………………………5

      B. A Court Deciding a Jurisdictional Motion to Dismiss Cannot Accept Disputed Factual Allegations in a Complaint as True………………..7

III.  Plaintiffs' Claims Were Timely Filed in Accordance with the *Dickinson* Stabilization Doctrine……………………………………………………9

IV.   Plaintiffs' Claims Were Timely Filed Under the Accrual Suspension Doctrine……………………………………………………………………11

      A. Plaintiffs Did Not Waive Their Argument that Their Claims Were Timely Filed Pursuant to the Accrual Suspension Doctrine………..12

      B. Plaintiffs Were "Intrinsically Reasonable" Within the Meaning of the Accrual Suspension Doctrine………………………………………..13

      C. Plaintiffs Claims Could Not Have Accrued Prior to the *Owens* Decision in 1988 and the *Peterman* Decision In 1994..…………….16

V.    The United States Has Waived Argument on the Non-Jurisdictional Arguments Raised in Plaintiffs' Opening Brief..………………………19

A. The Federal Rules of Appellate Procedure Require Plaintiffs Identify All Issues Being Appealed From or Risk Waiver………………….19

B. The Claims Court's Decision on the Merits Was the Assumption of Hypothetical Jurisdiction and Therefore Appealable………………20

C. This Court Has Already Found that Plaintiffs' Shoreline Was Cohesive, Therefore the United States' Evidence to the Contrary Should Have Been Excluded and Plaintiffs Evidence Was Unrebutted……………………………………………………..23

Conclusion and Relief Sought…………………………………………………25

## TABLE OF AUTHORITIES

**Cases**

*Applegate v. U.S.*, 25 F.3d 1579 (Fed. Cir. 1994)...............................................2, 10

*Ballam v. U.S.*, 806 F.2d 1017 (Fed. Cir. 1986) .................................................. 18

*Banks v. U.S.*, 314 F.3d 1304 (Fed. Cir. 2003) .............................................1, 5, 6, 7

*Bedford v. U.S.*, 192 U.S. 217 (1904) ..............................................................16, 17

*Boling v. U.S.*, 220 F.3d 1365 (Fed. Cir. 2000) .................................................... 11

*Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993)............... 8

*Engage Learning, Inc. v. Salazar*, 660 F.3d 1346 (Fed. Cir. 2011) ....................... 7

*Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379 (Fed. Cir. 1999) ............ 5

*F&H Investment Co. v. Sackman-Gilliland Corp.*, 728 F.2d 1050 (8th Cir. 1984) 20

*Fallini v. U.S.*, 56 F.3d 1378 (Fed. Cir. 1995)....................................................... 11

*Franklin v. U.S.*, 101 F.2d 459 (6th Cir. 1939), *aff'd on other grds*, 308 U.S. 516 (1939)........................................................................................................... 17

*Gaus v. Conair Corp.*, 363 F.3d 1284 (Fed. Cir. 2004) ........................................ 13

*Harris v. Ericsson*, 417 F.3d 1241 (Fed. Cir. 2005) ............................................ 20

*Holmes v. U.S.*, 657 F.3d 1303 (Fed. Cir. 2011).................................................... 15

*Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024 (D.C. Cir. 2003) ..................................................................................................... 22

*L.L.S. Leasing Corp. v. U.S.*, 695 F.2d 1359 (Fed. Cir. 1982) ............................. 15

*Laitram Corp. v. NEC Corp.*, 115 F.3d 947 (Fed. Cir. 1997) ................................ 5

*Latourette v. U.S.*, 150 F. Supp. 123 (D. Or. 1957) .............................................. 17

*Lesesne v. District of Columbia*, 447 F.3d 828 (D.C. Cir. 2006) .......................... 22

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)............... 17

*Marquez-Almanzar v. INS*, 418 F.3d 210 (2d Cir. 2005) ...................................... 22

*Mildenberger v. U.S.*, 643 F.3d 938 (Fed. Cir. 2011) ......................................11, 18

*Neely v. U.S.*, 546 F.2d 1059 (3rd Cir. 1976) ....................................................... 17

*Northern Helex Co. v. U.S.*, 634 F.2d 557 (Ct. Cl. 1980) ...................................4, 5

*Northwest Louisiana Fish & Game Preserve Comm'n v. U.S.*, 446 F.3d 1285 (Fed. Cir. 2006) .................................................................................................... 15

*Norton v. Matthews*, 427 U.S. 524, 532 (1976) .................................................... 22

*Owens*, *U.S. v. Kansas City Life Insurance Co.*, 339 U.S. 799 (1950).............13, 16

*Pandrol U.S.A., L.P. v. Airboss Ry. Prods., Inc.,* 320 F.3d 1354 (Fed. Cir. 2003) 23

*Peterman v. Michigan*, 446 Mich. 177 (1994) ..................................................... 13

*Pitman v. U.S.*, 457 F.2d 975 (1972) .................................................................... 16

*Rexnord Industries, LLC v. Kappos*, 705 F.3d 1347 (Fed. Cir. 2013)................... 8

*Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746 (Fed. Cir. 1988)6

*Samsung Electronics, Co., Ltd. v. Rambus, Inc.*, 523 F.3d 1374 (Fed. Cir. 2008). 21

iii

*Southern Pacific Co. v. U.S.*, 58 Ct.Cl. 428 (1923), *aff'd*, 266 U.S. 586 (1924) ... 16

*Stearns v. Beckman Instruments, Inc.*, 737 F.2d 1565 (Fed.Cir. 1984) ................... 5

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ..................... 22

*Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, -U.S.-, 130 S.Ct. 2592 (2010) ......................................................... 18

*Strategic Housing Finance Corp. of Travis County v. United States*, 608 F.3d 1317 (Fed. Cir. 2010) ................................................................................................ 21

*Tamulion v. Michigan State Waterways Comm'n*, 50 Mich. App. 60 (1973) ........ 18

*Toro Co. v. White Consolidated Industries, Inc.*, 383 F.3d 1326 (Fed. Cir. 2004) .. 9

*Totes-Isotoner Corp. v. U.S.*, 594 U.S. 1346 (Fed. Cir. 2010) .............................. 13

*U.S. v. Dickinson*, 331 U.S. 745 (1947) ............................................................. 2, 10

*U.S. v. Kansas City Life Ins. Co.*, 339 U.S. 799 (1950) ....................................... 17

*U.S. v. One 1961 Red Chevrolet*, 457 F.2d 1353 (5th Cir. 1972) ......................... 16

*Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1 (1st Cir. 1999) ........................ 23

**ARGUMENT**

## I.     Summary of Argument

The United States' arguments in support of the Claims Court's second jurisdictional dismissal – rendered after this Court had already sustained jurisdiction and squarely held that Plaintiffs had "met their jurisdictional burden," so that their "claims are not time-barred" – are without merit. *Banks v. U.S.*, 314 F.3d 1304, 1310 (Fed. Cir. 2003). First, since the jurisdiction issue, i.e., whether Plaintiffs' claims were barred by the statute of limitations, was decided by this Court, the Claims Court had no authority to revisit the issue. Under the Mandate Rule, the Claims Court was completely proscribed from reconsidering jurisdiction. Nor can the United States negate this Court's explicit mandate upholding jurisdiction by invoking supposed limitations in the Court's decision that are nowhere to be found in its written opinion. Simply put, the United States cannot avoid the Mandate Rule, and the Claims Court's corresponding error was in reconsidering this Court's jurisdictional holding.

Second, nothing argued by the United States would warrant this Court revisiting its prior jurisdictional decision. The only exception to the law of the case doctrine even arguably germane is the new evidence exception, but the evidence the United States cites to (predominantly the Corps 1958 Beach Erosion Control report) is not new and was part of the original record on appeal. Further,

1

its argument that this Court "accepted as true" the assertion by Plaintiffs in their complaints that the harbor jetties only began blocking the littoral drift in 1950, with the onset of the Corps project to clad the jetties in steel – an allegation that the United States expressly disputed with contrary evidence – is fundamentally misconceived. Under settled Federal Circuit law, a disputed jurisdictional assertion in a complaint cannot be accepted as true, and there is nothing in the Court's opinion to suggest that it departed from this rule in the prior appeal. Thus, the allegation that the jetties were permeable (i.e., did not block sand) before 1950 was not, and could not have been, the linchpin of the Court's jurisdictional decision in the prior appeal. In short, there is no basis for disregarding the law of the case that jurisdiction exists over Plaintiffs' claims.

Third, even if the jurisdiction issue could be reconsidered – and under the Mandate Rule and its companion, the law of the case doctrine, it cannot be reconsidered – Plaintiffs' claims were timely filed. Under the stabilization doctrine promulgated in *U.S. v. Dickinson*, 331 U.S. 745 (1947), and applied by this Court in both *Applegate v. U.S.*, 25 F.3d 1579 (Fed. Cir. 1994) and the prior *Banks* appeal, the uncertainty created by the very gradual, almost imperceptible process of erosion, combined with the substantial ongoing natural erosion, government studies indicating that most properties in Plaintiffs' zone had not yet been impacted by jetty-induced erosion, as well as proposed mitigation that was

ultimately implemented and continued for some 25 years, unquestionably delayed accrual of Plaintiffs' claims until 2000, precisely as this Court previously held.

Moreover, under the accrual suspension doctrine, the accrual of Plaintiffs' claims was deferred. Contrary to the United States' assertion, Plaintiffs properly raised this issue before the Claims Court. Under the "knew or should have known" prong of the accrual suspension doctrine, the government studies finding that the impact of the jetties had not yet reached most of Plaintiffs' zone made it objectively reasonable for those Plaintiffs to delay suit, since the likelihood of future damage is not enough to trigger a takings claim; it requires actual damage to trigger a claim.

Nor is this a question of Plaintiffs relying on the government to suspend accrual their claims. Rather, since the government volunteered to study the impact of the jetties – something the individual Plaintiffs could never have undertaken on their own – Plaintiffs were entitled to rely on the resulting reports. It was not until 1997 that the government retracted its prior conclusion and reported that Plaintiffs zone had been impacted by the jetties. Additionally, since Plaintiffs did not have a recognized property right, as against a navigational structure like a jetty, to uninterrupted littoral drift prior to 1994, their damage claims could not have accrued before then. Thus, under either prong of the accrual suspension doctrine, Plaintiffs' claims did not accrue until the late 1990's, by which time the

government's mitigation program was well underway, delaying actual accrual until 2000.

Finally, the United States has waived its right to dispute the Claims Courts' merits findings as it declined to address Plaintiffs' arguments in its response brief. The Untied States unilaterally attempted to reserve its rights to address non-jurisdictional arguments at a later date, without authority or reasonable explanation to do so. Indeed, the Claims Court's decision was the assertion of hypothetical jurisdiction and is ripe for appeal. Because the United States declined to address the merits, they have waived the right to do so.

In sum, whether under the Mandate Rule, the *Dickinson* stabilization doctrine or the accrual suspension doctrine, Plaintiffs' claims were timely filed. The Claims Court's second jurisdictional dismissal is legally erroneous and must be reversed.

## II.   The Claims Court's Dismissal Order Violated the Compulsory Mandate Rule

In its response brief, the United States ignores the "familiar doctrine that a lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid to rest." *Northern Helex Co. v. U.S.*, 634 F.2d 557, 560 (Ct. Cl. 1980), quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140 (1940). Here, the issue laid to rest by this Court's mandate from the prior *Banks* appeal is clear: Plaintiffs "claims are not time-barred."

4

*Banks*, 314 F.3d at 1310. The Court did not qualify its ruling, nor invite the lower court, either overtly or by implication, to revisit the statute of limitations issue on remand. As such, the Claims Court had "no power or authority" to disregard this Court's mandate and dismiss Plaintiffs' claims on statute of limitations grounds for a second time. *Northern Helex*, 634 F.2d at 560. For this reason alone, the Claims Court's order dismissing Plaintiffs' claims for lack of jurisdiction must be reversed.

## A. This Court's Explicit Mandate Upholding Jurisdiction Cannot Be Abridged By Implication

The United States cannot avoid this Court's specific mandate by asserting it is limited by unstated inferences that do not appear on the face of this Court's 2001 decision. For while the scope of a mandate may be *expanded* by "necessary implication," *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997), there is no authority for the proposition that an issue explicitly decided can be *contracted* by implication. On the contrary, the lower court must follow "both the letter and the spirit of the mandate." *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999).[1]

---

[1]    The decision in *Stearns v. Beckman Instruments, Inc.*, 737 F.2d 1565 (Fed. Cir. 1984), cited by the United States, is not to the contrary. In *Stearns*, the issue was whether the reversal of summary judgment in favor of the defendant precluded a directed verdict in favor of the defendant in the subsequent trial. Because the issue decided in the first appeal was simply whether there was a factual dispute requiring a trial, the mandate had no bearing on whether the plaintiff had met its

More to the point, the United States asserts that what this Court "really" decided is that Plaintiffs' claims are not time-barred if, but only if, the jetties were permeable before 1950, and did not contribute to downdrift erosion prior to that date. (Resp. Br. p. 26-27).[2] Hence, according to the United States, the jurisdictional issue was left wide open by this Court and the Claims Court was free to revisit it (even though none of the parties, nor the Claims Court, understood jurisdiction to be at issue in the subsequent trials, and the Claims Court only raised the issue *after* the second trial).[3]

The United States' assertion is at odds with this Court's decision because the only reference to 1950 is this Court's mention, in passing, that the Corps installed sheet piling to the jetties between 1950 and 1989. *Banks*, 314 F.3d at 1305. Nowhere does this Court attach jurisdictional significance to this fact, much less tie its entire holding to the steel cladding. What's more, the predicate to the United

___

burden of proof after putting on its case at trial. Nowhere did the *Stearns* court state that the scope of an express mandate could be narrowed by implication.

[2]     Plaintiffs' opening brief is identified as "Br." The United States response brief is identified as "Resp. Br."

[3]     The United States' contrived reading of this Court's mandate highlights another error in the Claims Court's jurisdictional dismissal. Because the parties had no notice before or during trial that jurisdiction was once again an issue, Plaintiffs had no occasion to and did not litigate the jurisdictional facts. See *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988) (Plaintiff must be given an opportunity to litigate the jurisdictional facts before dismissal is ordered).

States' position – that this Court "presumed as true" Plaintiffs' allegation in their complaints that jetty-induced erosion did not begin before the commencement of the steel cladding project in 1950 – is demonstrably false.  Indeed, elsewhere this Court observed that the "Corps activities impacting the St. Joseph Harbor and shoreline began in the 1830s." *Banks*, 314 F.3d at 1306.

**B.    A Court Deciding a Jurisdictional Motion to Dismiss Cannot Accept Disputed Factual Allegations in a Complaint as True**

The United States relies on the axiom that in deciding a motion to dismiss, the trial court must accept as true the factual allegations in the complaint.  But as this Court explained in *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011), that axiom does not apply to jurisdictional motions to dismiss, where, as here, the "facts" in question were disputed.  Thus, in its original motion to dismiss, the United States made two arguments regarding Plaintiffs' allegation that jetty-induced erosion did not commence until 1950, with the onset of the steel cladding project.  First, it contended that even if true, Plaintiffs' claims were time-barred.  A8888.  Second, the United States disputed the allegation regarding commencement of the erosion, and asserted its evidence separately "reveal[ed] the staleness of their takings claims."  A8889.  The United States evidence included (i) an interrogatory answer by Plaintiffs tracking jetty-induced erosion back to 1900, (ii) proposed stipulations by Plaintiffs asserting that the "long jetties," which reached their current length in 1903, "act as a total littoral barrier"; (iii) the

7

deposition of Dr. Guy Meadows, in which Dr. Meadows states that the harm from the jetties has been accumulating "since 1903"; and (iv) a study by Professor Ernest Brater showing that erosive processes precede plaintiffs theory that such erosion only began after the commencement of sheet piling maintenance by the Corps in 1950. A8892, A8896, A8905, A8956-57.[4]

The Claims Court, and hence the United States, now insist that Plaintiffs' allegation regarding the steel cladding was taken as true in deciding the original motion, notwithstanding the absence of any evidence to support the allegation, and the wealth of contrary evidence. Given that the United States disputed Plaintiffs' allegation in its motion as an alternative basis for dismissing Plaintiffs' complaints, there was no way that this Court accepted it as true. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) ("only uncontroverted factual allegations are accepted as true for purposes of the [jurisdictional] motion."). Moreover, since this Court *reversed* the Claims Court, it necessarily also rejected the United States' alternative ground for sustaining the dismissal. This is because the Court will affirm on any basis appearing in the record, regardless of the Claims Court's reasoning. *Rexnord Industries, LLC v. Kappos*, 705 F.3d 1347, 1356 (Fed. Cir. 2013) (Court of appeals may affirm on any grounds, including grounds not

---

[4]     As discussed in Plaintiffs' opening brief, the case was nearing trial at the time the United States brought its original motion to dismiss, and there was an abundance of additional evidence in the record disputing Plaintiffs allegation that jetty-induced erosion did not commence until 1950. (Br. p. 29.)

relied upon by the lower court). Hence, by reversing, this Court found no jurisdictional significance to the fact that the jetties were impermeable before 1950, and began to contribute to downdrift erosion prior to that date.

In sum, the Court's express, unqualified holding that Plaintiffs' claims are not time-barred is the law of the case, and under the Mandate Rule, the Claims Court had no power or authority to reconsider a jurisdictional issue already decided by this Court.[5] The Claims Court's dismissal order is legally erroneous and must be reversed.

### III.    Plaintiffs' Claims Were Timely Filed in Accordance with the *Dickinson* Stabilization Doctrine

Even without the strictures of the Mandate Rule, the United States' assertion that Plaintiffs' claims accrued at some unspecified date prior to 1952 and are time-barred is without merit.[6] The United States ignores the teachings of *Applegate* and

---

[5]    In pressing its constricted view of this Court's mandate, the United States did not separately invite this Court (as a fallback argument) to revisit its mandate. And for good reason, since, as explained in Plaintiffs opening brief (Br. p. 26-30), none of the exceptional circumstances that would warrant a departure from the law of the case are present here. See *Toro Co. v. White Consol. Industries, Inc.*, 383 F.3d 1326 (Fed. Cir. 2004).

[6]    The United States does not contest that Plaintiffs' claims were timely filed if they accrued after February 1952, or less than 6 years prior to the issuance of the Corps 1958 Beach Erosion Control study, since that report, together with subsequent reports in 1973, 1974, 1996, 1997 and 1999, by promising and then actually implementing a mitigation program, created justifiable uncertainty regarding the permanency of jetty-induced erosion.

its application of the *Dickinson* stabilization doctrine to the precise circumstances facing Plaintiffs: a "very gradual. . . almost imperceptible physical process" of erosion over a period of years. *Applegate*, 25 F.3d at 1582. As the Court in *Applegate* emphasized, *Dickinson* discouraged a strict application of accrual principles and instructed the courts to avoid procedural rigidities in addressing a gradual physical taking. The accrual argument advanced by the United States – that situation must have stabilized before 1952 because the jetties began blocking sand in 1903 – does just the opposite. It assumes that Plaintiffs (actually hypothetical plaintiffs, since none of the Plaintiffs owned property on Lake Michigan before 1952) possessed an understanding of the processes of jetty-induced erosion that scientists themselves did not have. According to Dr. Meadows, whose deposition testimony was never challenged by the United States, scientists did not have a good understanding of the physical processes until the 1960's and 70's. A8972.

Nor is that all. Unlike the situation in *Applegate*, Plaintiffs faced two additional complicating factors. First, their shorelines were subject to natural erosion, so merely observing that erosion was taking place would not identify the jetties as the culprit. Second, lake erosion is more episodic than ocean erosion because it is tied to lake levels, which are quite variable, further obscuring the contribution of the jetties.

In short, this case is *Applegate's* circumstances of imperceptible physical process, and its construction of the *Dickinson* stabilization doctrine controls the jurisdictional issue here.[7]   All of the factors forestalling stabilization in *Applegate* are present here, including a gradual imperceptible physical process, promises to mitigate, as well as much more, such as an actual 25 year mitigation program, and scientific uncertainty.  Under these circumstances, "the accrual of plaintiffs' claims remained uncertain" until 2000, exactly as this Court held in the prior appeal. *Banks*, 314 F.3d at 1310.   For this reason as well, the Claims Court's order dismissing Plaintiffs' complaints for want of jurisdiction is legally erroneous, and must be reversed.

## IV.   **Plaintiffs' Claims Were Timely Filed Under the Accrual Suspension Doctrine**

The United States effort to defeat Plaintiffs' alternative arguments in support of jurisdiction, based on the accrual suspension doctrine, also fails.  Plaintiffs make two such arguments: (i) Because the United States, in ostensibly objective studies of conditions downdrift from the St. Joseph jetties, repeatedly concluded that jetty-induced erosion had not yet reached most of Plaintiffs properties, those Plaintiffs

---

[7]     The decisions in *Fallini v. U.S.*, 56 F.3d 1378 (Fed. Cir. 1995), *Boling v. U.S.*, 220 F.3d 1365 (Fed. Cir. 2000), and *Mildenberger v. U.S.*, 643 F.3d 938 (Fed. Cir. 2011), cited by the United States, are not to the contrary.  *Fallini* involved a federal statute requiring plaintiffs to allow wild horses access to water, and did not concern a gradual physical process.   And in both *Boling* and *Mildenberger* there was no mitigation program, either promised or actual, and thus no justifiable uncertainty that staved off stabilization.

claims (28 out of 36) did not accrue until the United States reassessed the situation in 1997 and concluded that jetty-induced erosion had indeed reached all of Plaintiffs' zone, and had impacted that zone much earlier than previously understood; and (ii) because, under Michigan law, lakeshore owners did not have a recognized property right (as against a navigational structure) to uninterrupted littoral drift prior to 1994, Plaintiffs' claims did not accrue before then.

The United States makes three arguments in opposition. First, Plaintiffs purportedly waived their accrual suspension arguments because they did not raise them in their opening jurisdictional brief in the Claims Court. Second, Plaintiffs knew or should have known that jetty-induced erosion had reached their properties well before 1997, notwithstanding the government reports to the contrary. And third, Michigan property rights law is irrelevant, and Plaintiffs should have known they had a legal right to claim jetty-induced erosion as a taking, notwithstanding so-called "adverse precedent" that completely foreclosed such a claim. None of these arguments has merit.

A.    **Plaintiffs Did Not Waive Their Argument that Their Claims Were Timely Filed Pursuant to the Accrual Suspension Doctrine**

To begin with, Plaintiffs did not waive their accrual suspension argument. Plaintiffs argued in the Claims Court that, contrary to the United States assertion that the 1958 Beach Erosion Control report put them on notice of jetty-induced erosion, the report actually showed the opposite, i.e., Plaintiffs' properties had not

yet been materially impacted by the jetties, so that the extent of any damage was not foreseeable until much later. A8999-9001. Plaintiffs put the much later date at 1997, when the United States issued its reassessment concluding that its earlier reports had been mistaken, and that Plaintiffs properties had actually impacted years before. A9004. Similarly, Plaintiffs argued that they did not have a legally cognizable cause of action until the decisions in *Owens v. U.S.*, 851 F.2d 1404 (Fed. Cir. 1988) and *Peterman v. Michigan*, 446 Mich. 177 (1994). A9011-12.

Thus, Plaintiffs accrual suspension arguments were unquestionably raised in the court below, and cannot be the subject of a waiver. At best, the United States is contending that Plaintiffs did not use the term "accrual suspension" to characterize their arguments in the court below, but waiver is only triggered by missing arguments, not missing labels. *Gaus v. Conair Corp.*, 363 F.3d 1284, 1287-88 (Fed. Cir. 2004) (argument not waived where, although using different language, it involved the same concept argued below); *Totes-Isotoner Corp. v. U.S.*, 594 U.S. 1346, 1355, n.6 (Fed. Cir. 2010) (substance of argument, not its label, controls waiver).

### B. Plaintiffs Were "Intrinsically Reasonable" Within the Meaning of the Accrual Suspension Doctrine

The United States argues that Plaintiffs should have known that they were suffering jetty-induced erosion as early as 1958, because they were put on notice

by the Corps 1958 Beach Erosion Control report, and thus do not get the benefit of the accrual suspension doctrine.    (Resp. Br. p. 44)    The problems with this argument are manifold.  First, the 1958 report did not purport to address the causes of erosion, only means for abating the problem.    Second, the study area, characterized as "the principle problem area," was north of most Plaintiffs' properties. A5939.  The bulk of Plaintiffs' zone was only "covered in a general manner."  A5941.  Further, although the report indicated that the littoral drift was being blocked, it noted that most of Plaintiffs zone had minimal shore protection and was "fronted by extensive sand dune deposits," strongly suggesting that serious erosion was not yet a problem. A5947.

Aside from misapprehending the 1958 report, the United States argument ignores (i) the existence of substantial natural erosion in Plaintiffs' zone, which masks the impact of the jetties; (ii) the very gradual processes at work, and the fact that jetty-induced erosion moves slowly downdrift, so that the area of impact expands over time; (iii) scientific understanding of the processes of erosion on Lake Michigan only came into clear focus in the 1960s and 70s; and most significantly; (iv) the United States, in ostensibly impartial reports, concluded that jetty-induced erosion had not reached most of Plaintiffs' zone as of 1973,[8] and did

---

[8]    Plaintiffs (Br. p. 35, n.3) explained that 7 of their properties were within what the 1973 report referred to as the "area of adverse influence" of the jetties, as those properties were less than "21,000 feet south of the harbor."  A5570.

not retract that conclusion until 1997, when the United States reported that jetty-induced erosion had indeed reached all of Plaintiffs' zone.[9]   A5515-5517, 5770, 5776, 5782, 8957.

In view of the foregoing, Plaintiffs were "intrinsically reasonable," within the meaning of the accrual suspension doctrine, *Holmes v. U.S.*, 657 F.3d 1303, 1320 (Fed. Cir. 2011), in not knowing (or having reason to know) that jetty-induced erosion had caused them actual harm prior to 1997.  And, as the Court in *Northwest Louisiana Fish & Game Preserve Comm'n v. U.S.*, 446 F.3d 1285, 1290 (Fed. Cir. 2006), made plain, knowing that you will eventually be harmed, and actually suffering harm are not the same thing.  For accrual purposes only the latter counts, and here Plaintiffs reasonably concluded, up until 1997, that they had not yet been harmed.  Accordingly, their claims did not accrue before then.

### C. Plaintiffs Claims Could Not Have Accrued Prior to the *Owens* Decision in 1988 and the *Peterman* Decision in 1994

---

[9]    The United States argues that Plaintiffs could not rely on these government studies because they did not individually contract with the government to conduct them, purporting to distinguish *L.L.S. Leasing Corp. v. U.S.*, 695 F.2d 1359 (Fed. Cir. 1982).  However, what allowed the plaintiff in *L.L.S. Leasing* to rely on the government to self report was not a contract per se, but the fact that the government took "upon itself the obligation to report overtime usage, reliev[ing] the lessor of the costly burden of monitoring such usage."  *Id.*, 695 F.2d at 1366.  So too here, by volunteering to conduct extensive studies of erosion in the Lake Michigan shoreline south of the St. Joseph jetties, the government relieved these citizen Plaintiffs of the costly burden of investigating the complex physical processes themselves.  For accrual purposes, it was perfectly reasonable for Plaintiffs to rely on these government studies. *Ibid.*

Case: 12-5067    Document: 45    Page: 21    Filed: 05/08/2013

Under the accrual suspension doctrine, a claim does not accrue "until the plaintiff has a right to enforce his cause." *U.S. v. One 1961 Red Chevrolet*, 457 F.2d 1353, 1358 (5th Cir. 1972). The United States argues that Plaintiffs cannot invoke this principle because they should have anticipated that the law would change, and besides, Plaintiffs claims had already expired before the so-called "adverse precedent" was issued. The United States is wrong on both counts.

In the first place, the body of law that Plaintiffs were faced with prior to the *Owens* decision was not just adverse, but, as the Court in *Owens* stated, erosion taking claims like Plaintiffs were "completely foreclosed." 851 F.2d at 1418. Nor did this dispositive precedent only date back to the *Pitman v. U.S*, 457 F.2d 975 (1972), as the United States contends. On the contrary, there was a wealth of precedent, including Supreme Court cases, going back to the early 1900's, holding that "indirect" erosion damage from a navigational structure (in contrast to "direct" damage such as by flooding) does not result in a taking. See, e.g., *Bedford v. U.S.*, 192 U.S. 217, 223-25 (1904) (no taking claim for erosion damage caused by government revetment that diverted river flow to plaintiffs' property); *Southern Pacific Co. v. U.S.*, 58 Ct. Cl. 428 (1923), *aff'd*, 266 U.S. 586 (1924) (no taking claim for erosion damage caused by government jetty that redirected ocean waves); *Franklin v. U.S.*, 101 F.2d 459 (6th Cir. 1939), *aff'd on other grounds*, 308 U.S. 516 (1939) (no taking claim for erosion damage caused by government dikes that

16

diverted river flow to plaintiff's property); *Latourette v. U.S.*, 150 F. Supp. 123 (D. Or. 1957) (no taking claim for erosion damage caused by government jetty that blocked littoral drift of sand).

For the United States to suggest that Plaintiffs should have anticipated the *Owens* decision, and the sea change it wrought in erosion damage taking cases, is the very type of "soothsayer" argument that the court in *Neely v. U.S.,* 546 F.2d 1059, 1068 (3rd Cir. 1976), squarely rejected: "To require clairvoyance in predicting new jurisprudential furrows. . . would impose an unconscionable prerequisite to asserting a timely claim."[10]  Under the accrual suspension doctrine, Plaintiffs claims could not have accrued prior to the *Owens* decision in 1988.

The United States' related argument – that the change in Michigan law following *Owens* is irrelevant to the jurisdictional analysis – is equally misplaced. Prior to the Michigan Supreme Court's decision in *Peterman*, Michigan law held that "littoral owners are not entitled to compensation for erosion damage. . ." *Tamulion v. Michigan State Waterways Comm'n*, 50 Mich. App. 60, 69 (1973).

---

[10]  The Supreme Court case that the United States claims foreshadowed *Owens*, *U.S. v. Kansas City Life Insurance Co.*, 339 U.S. 799 (1950), reinforces *Neely's* point.  The Court in *Kansas City Life* characterized the damage at issue as resulting from a direct invasion of land through a kind of flooding, 339 U.S. at 809-10, not like the indirect erosion damage here.  And as recently as 1982, the Supreme Court in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982), identified the *Kansas City Life* case as a direct damage flooding case (where a taking is recognized), and contrasted it with *Bedford* (an indirect erosion damage case where a taking was not found).

This was not a question of taking law alone, but also of property rights under Michigan law. Prior to *Peterman*, littoral owners in Michigan did not have a property right, as against a navigational structure, to uninterrupted littoral drift. Cf. *Ballam v. U.S.*, 806 F.2d 1017, 1022 (Fed. Cir. 1986) (Pre-*Owens* erosion case holding that the plaintiff "had no property right" as against the Corps for the "collateral consequences of navigational improvements"). And since state law defines the property rights that can be the subject of a taking claim, *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 130 S.Ct. 2592, 2597-98 (2010) (property rights of littoral owners are defined by state law), the absence of a Michigan property right meant that Plaintiffs had no cognizable claim until 1994, when *Peterman* was decided. Cf. *Mildenberger*, 643 F.3d at 948-49 (taking claims properly dismissed where "[c]laimants alleged. . . riparian rights are unrecognized under Florida law"). As a consequence, under the accrual suspension doctrine, Plaintiffs taking claims could not have accrued before 1994.

In sum, the Claims Court's holding that Plaintiffs claims accrued before 1952, and are therefore time-barred, ignores the legal landscape that existed before *Owens* and *Peterman*. Plaintiffs' claims could not and did not accrue until they had a legal right to pursue them, which did not happen until decades after 1952. The Claims Court's order dismissing Plaintiffs' claims on jurisdictional grounds was legally erroneous, and must be reversed.

## V.    The United States Has Waived Argument On The Non-Jurisdictional Arguments Raised In Plaintiffs' Opening Brief

The United States asserts this Court lacks jurisdiction over Plaintiffs' appeal on the merits and attempts to reserve all of its defenses on liability and damages. However, an appellee is permitted one opportunity in its response brief to refute all arguments presented by appellants and a failure to do so waives that right.  An appellee cannot unilaterally preserve its right to dispute the position of the appellant at a later date.   To hold otherwise would encourage never-ending litigation and waste of judicial resources.  The corollary of this waiver rule applies to appellants – an appellant cannot present an argument for the first time in its reply brief – in order to give an appellee an opportunity to present its position on all issues.   Judicial economy and fundamental fairness precludes this attempted "reservation" of its legal arguments by the United States.

### A.    The Federal Rules of Appellate Procedure Require Plaintiffs Identify All Issues Being Appealed From or Risk Waiver

Indeed, the Plaintiffs had no choice but to dispute the Claims Court's merits ruling.  First, pursuant to Fed. R. App. P. 3(c)(1)(b), the appellant must "designate the judgment, order, or part thereof being appealed." *See F&H Investment Co. v. Sackman-Gilliland Corp.*, 728 F.2d 1050 (8th Cir. 1984) (finding issue not preserved for appeal because it was not specifically included in the notice of appeal under Fed. R. App. P. 3(c)(1)(b)).  Therefore, in order to comply with the Federal

Rules of Appellate Procedure, Plaintiffs were required to designate all the holdings of the Claims Court it wished to appeal or risk waiving the right to appeal those issues. An appellate court retains case-by-case jurisdiction on whether to apply waiver. *See Harris v. Ericsson*, 417 F.3d 1241 (Fed. Cir. 2005). Plaintiffs correctly appealed all holdings of the Claims Court's ruling in order to protect their appellate rights on all issues.

The United States was not unfairly surprised by any arguments in Plaintiffs' brief as they were identified in Plaintiffs' notice of appeal. The United States provided no reason for declining to respond to Plaintiffs' arguments on the merits other than it insist it was avoiding "piecemeal consideration" of the case. (Resp. Br. p. 54.) Actually, the opposite is true. Resolution of Plaintiffs' merits arguments precludes a further appeal to this Court. (Indeed, if this Court finds jurisdiction and remands to the Claims Court, the Claims Court will merely re-issue its decision without the jurisdiction portion, which Plaintiffs will again appeal.) This appeal of the merits decision is correctly before this Court and the United States has waived any opposition to reversal of the ruling.

**B.    The Claims Court's Decision on the Merits Was the Assumption of Hypothetical Jurisdiction and Therefore Appealable**

The Claims Court's ruling on the merits was the assumption of hypothetical jurisdiction. First, it incorrectly dismissed Plaintiffs' claims for lack of jurisdiction. The Court then continued that for the purposes of judicial efficiency:

20

> [I]f the reviewing court in any appeal should disagree with the court's view of its jurisdiction, and to avoid the possibility of a trial opinion being drafted months or years after the trial, and the possibility of repetitive trial, the court also presents here its findings from the trial. These findings are presented in the alternative and, in the absence of jurisdiction, do not entitle plaintiffs to just compensation in the amounts determined by the court."

A87. Such a decision is not an advisory opinion, because it is the Constitution's "case or controversy" requirement which prohibits an advisory opinion.[11] Here, there is no dispute there is a live case and controversy. Indeed, the Claims Court's alternative findings are more akin to the assumption of "hypothetical jurisdiction." Hypothetical jurisdiction is the practice of assumption of jurisdiction for the purpose of deciding the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). It is practiced "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Id.* While the *Steel Co.* court refused to endorse such an approach in Article III cases because it went beyond authorized judicial action, the Supreme Court endorsed such action in other types of cases. *Norton v. Matthews*, 427 U.S. 524, 532 (1976); Cf. *Marquez-Almanzar v. INS*, 418 F.3d 210, 216 n.7 (2d Cir. 2005) ("The jurisdictional prerequisites to our

---

[11]    If a Constitution, statute, or treaty does not confer jurisdiction on a federal court, it has no power to resolve the merits of the controversy before it. Consequently, a federal court should not render an opinion on the merits when it determines that it lacks jurisdiction over the matter: 'Federal courts are not in the business of rendering advisory opinions." *Strategic Housing Finance Corp. of Travis County v. United States*, 608 F.3d 1317, 1332 (Fed. Cir. 2010).

consideration of the merits in this case are imposed by statute, not the Constitution, and thus are not a bar to our assumption of 'hypothetical jurisdiction'."). Here, Plaintiffs are entitled to appeal on the merits as a matter of right and it is proper to address the merits. *See Lesesne v. District of Columbia*, 447 F.3d 828, 832 (D.C. Cir. 2006) (reversing district court's mootness ruling to hold it had jurisdiction, and addressing the merits of the claim); *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1031 (D.C. Cir. 2003) ("Although the district court would have been without jurisdiction to consider the merits had [the plaintiff] truly lacked standing, because we have concluded that [the plaintiff] does have standing, we now proceed to consider the court's decision to grant summary judgment."); *Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 7 (1st Cir. 1999) ("[I]t appears that the district court reached the merits of the [appellants' claim], despite its mootness conclusion. Therefore, we treat the district court's decision on the merits as an alternative ground for the denial and review it accordingly.").

Therefore, because the Claims Court's ruling was on the merits under its assumption of hypothetical jurisdiction, and the United States declined to oppose Plaintiffs' arguments in its response brief, it has waived its right to do so and judgment must be entered in Plaintiffs' favor. *Pandrol U.S.A., L.P. v. Airboss Ry. Prods., Inc.,* 320 F.3d 1354, 1366-67 (Fed. Cir. 2003) (holding that defendant's arguments were waived when they were not raised in response to the motion for

22

summary judgment). This Court should remand to the Court of Federal Claims for the entry of judgment in favor of the Plaintiffs.

C.  **This Court Has Already Found That Plaintiffs' Shoreline Was Cohesive, Therefore The United States' Evidence To The Contrary Should Have Been Excluded And Plaintiffs Evidence Was Unrebutted**

Indispensably, part of the mandate of this Court's opinion was the predicate finding that the shoreline was cohesive, such that the erosion was permanent and irreversible. 314 F.3d 1307, 1310. In Plaintiffs' opening brief, the Claims Court's erroneous denial of Plaintiff' motion in limine to preclude mitigation evidence by the Government was specifically addressed, and the United States has chosen not to defend that ruling. As set forth in pages 39-43 of Appellants' Brief, the Claims Court's denial of Plaintiffs' motion in limine permitted the introduction of substantial evidence into the record as to whether the Government's failed mitigation in the 80's and 90's resulted in the shoreline being sandy (where erosion could be reversible), as opposed to cohesive and therefore permanently eroded.

The United States took a calculated risk by building its damages rebuttal on the improperly admitted mitigation evidence. Specifically, the United States' mitigation evidence supported its appraisal evidence that the Plaintiffs' properties had lost no value and only minimal, inconsequential, shore protection was needed. The United States has now compounded that bet by not briefing the Mandate issue

raised in the opening brief which is inextricably intertwined with this Court's jurisdictional ruling.

As this litigation has now been pending nearly 15 years, has been fully tried on liability and damages, and now twice appealed on jurisdiction, Plaintiffs' request a ruling from this Court that the scope of the Mandate required the granting of Plaintiffs' motion in limine. Further, upon reversing the Claims Court's erroneous denial of that motion, Plaintiffs request that the remand include direction for the entry of judgment on Plaintiffs' request for damages. The inescapable result of this Court's ruling is that Plaintiffs' damages evidence will be unrebutted, unlike the United States' damages evidence, which relied upon the impermissible and inadmissible foundation of mitigation evidence.

## CONCLUSION AND RELIEF SOUGHT

For the reasons stated above, Plaintiffs respectfully request that this Court reverse the Claims Court's ruling that there is no jurisdiction; reverse the Claims Court's denial of Plaintiff's motion in limine on cohesive shoreline evidence and remand to enter judgment; and for the other relief set forth in Plaintiff's principal brief.

Dated:  May 8, 2013                       Respectfully submitted,

                                          JOHN H. BANKS, et al.

                              By:    /s/ Mark E. Christensen
                                     Mark E. Christensen

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, Illinois 60431
(708) 748-8975

Mark E. Christensen, Esq.
Christensen & Ehret, LLP
135 South Lasalle, Suite 4200
Chicago, Illinois 60603
(312) 634-1014
mchristensen@christensenlaw.com

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street, 3200
Chicago, Illinois 60603
(312) 641-3200

## <u>CERIFICATE OF COMPLIANCE</u>

1.  This reply brief complies with the type-volume limitation of Fed. R. App. P.

    28.1(e)(2) or 32(a)(7)(B) because:

    a.  This brief contains 6967 words, excluding the parties of the brief

        exempted by Fed. R. App. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    a.  This brief has been prepared in proportionally spaced typeface using

        Microsoft Word 2007 in 14 point Times New Roman.


Dated: May 8, 2013                         By:    /s/ Mark E. Christensen
                                                  Counsel for Appellants

## **<u>CERIFICATE OF SERVICE</u>**

I certify that on May 8, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/EFC system.  I certify that all participants in the case are registered CM/EFC users and that service will be accomplished by the CM/EFC system.

 /s/ Marcella S. Novellano